Andrew K. Alper (State Bar No. 088876)
FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 Wilshire Boulevard
Seventeenth Floor
Los Angeles, California 90048-4920
Telephone: (323) 852-1000
Facsimile: (323) 651-2577

Attorneys for MATSCO

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re<br><br>E. SHIRAZI DDS INC.,<br><br>Debtor. | CASE No. 8:10-bk-21263-TA<br><br>Chapter 7<br><br>**STIPULATION BY AND BETWEEN MATSCO AND THE DEBTOR FOR RELIEF FROM THE AUTOMATIC STAY TO ALLOW MATSCO TO TAKE POSSESSION OF AND LIQUIDATE PERSONAL PROPERTY ASSETS OF DEBTOR AND FOR TURNOVER ORDER**<br><br>**[No Hearing Date]** |

TO THE HONORABLE THEODOR ALBERT, UNITED STATES BANKRUPTCY JUDGE, AND ALL OTHER INTERESTED PARTIES AND TO THEIR ATTORNEYS OF RECORD:

This Stipulation is entered into by and between Matsco, a Division of Wells Fargo Bank, N.A. ("Matsco"), a creditor and party in interest herein, by and through its attorneys of record, Andrew K. Alper of Frandzel Robins Bloom & Csato, L.C., on the one hand, and Debtor, E. Shirazi DDS, Inc., a California corporation ("Debtor") by her attorney of record, Daren M. Schlecter with respect to the following matters.

1. On or about March 26, 2007, the Debtor executed a Loan and Security Agreement evidencing a loan made by General Electric Capital Corporation ("GE") to the Debtor in the sum

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

of $574,000.00. Pursuant to the terms of the Loan and Security Agreement and the Promissory Note contained therein, the Debtor was to 3 monthly payments of zero followed by payments in months 4-120 in the sum of $7,585.95. A true and correct copy of the Loan and Security Agreement is attached hereto, marked Exhibit "1" and is incorporated herein by this reference.

2. The Debtor did not made payments pursuant to the terms of the Loan and Security Agreement and Matsco obtained a Judgment against the Debtor on April 5, 2010, in the sum of $801,763.91 together with a Judgment for possession of the Collateral defined below. A true and correct copy of the Judgment is attached hereto, marked Exhibit "2" and is incorporated herein by this reference.

3. Pursuant to the terms of the Loan and Security Agreement, Exhibit "1", GE and now Matsco, was granted a security interest in all of the Debtor's cash, accounts, chattel paper, and other rights to payment, whether then owned or thereafter acquired, all inventory, whether then owned or thereafter acquired, all equipment, whether then owned or thereafter acquired, and all general intangibles and contract rights which includes all patient charts and records of the Debtor whether then owned or thereafter acquired together with all substitutions and replacements for and products and proceeds of the foregoing personal property and books and records related thereto and wherever such personal property assets were located ("Collateral"). GE and Matsco had filed UCC-1 Financing Statements perfecting its/their lien starting on March 23, 2007. True and correct copies of the UCC-1 Financing Statements are attached hereto, marked Exhibits "3" and "4" and are incorporated herein by this reference.

4. The Debtor filed its bankruptcy petition on August 13, 2010, pursuant to Chapter 7 of the Bankruptcy Code. The Debtor admits that the Collateral has no equity for the Debtor or the Estate over and above Matsco's lien and that the Debtor is not entitled to possession of the Collateral as a result of the Judgment. However, the Debtor contends it has concerns about turning over the patient records and charts because of confidentiality and privacy issues. Matsco contends that it is entitled to take possession of the patient records and charts. As a result of the foregoing, Matsco and the Debtor stipulate and agree as follows:

5. IT IS STIPULATED AND AGREED that the automatic stay shall terminate to

allow Matsco to take possession of and liquidate the Collateral except for the patient records and charts and any software related to the care of the patients. Debtor has represented to Matsco that it has segregated these electronics from records regarding accounts receivable.

6. IT IS FURTHER STIPULATED AND AGREED that the Debtor shall turn over possession of the Collateral to Matsco and this turnover order may be enforced in accordance with 11 U.S.C. § 105.

7. IT IS FURTHER STIPULATED AND AGREED that the Debtor shall also turn over all books and records relating to all cash in the Debtor's possession, all software with respect to patient lists and accounts, and all software with respect to computer records reflecting accounts receivable.

8. IT IS FURTHER STIPULATED AND AGREED that in lieu of turning over the accounts receivable, proceeds therefrom and inventory, the Debtor or Elham Shirazi may instead pay to Matsco the total amount of the accounts receivable as of the Petition Date together with the value of the inventory;

9. IT IS FURTHER STIPULATED AND AGREED that Matsco shall file a motion for relief from stay and the Debtor will agree on shortened time to hear the Motion for Relief from Stay with respect to the turn over of the all patient records and charts, which constitute general intangibles and the parties reserve their rights and remedies with respect to that Motion.

10. IT IS FURTHER STIPULATED AND AGREED that except as expressly set forth herein, nothing waives or releases any rights that Matsco has against the Debtor, E. Shirazi, or any other person or entity. Likewise, except as stated herein, the Debtor nor E. Shirazi waive any of their rights or defenses that they may have to any other claims or contentions of Matsco.

11. IT IS FURTHER STIPULATED AND AGREED that, to the extent necessary, Matsco may proceed in this Court or in State or Federal Court as Matsco deems appropriate for the purpose of enforcing the Order on this Stipulation and/or for taking possession of the Collateral or liquidating the Collateral after this Order has been entered by the Court.

12. IT IS FURTHER STIPULATED AND AGREED that this Stipulation and the Order entered thereon shall remain effective between the parties hereto in the event this Chapter 7

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

case is converted to another Chapter of the Bankruptcy Code or dismissed and any new Chapter proceeding is filed.

13. IT IS FURTHER STIPULATED AND AGREED that this Stipulation and any Order entered thereon shall be effective immediately and all Federal and State Court stays are hereby waived by the parties.

DATED: October 17, 2010

FRANDZEL ROBINS BLOOM & CSATO, L.C.

By: ______________________
ANDREW K. ALPER
Attorneys for MATSCO

DATED: October 13, 2010

LAW OFFICE OF DAREN M. SCHLECTER

By: ______________________
DAREN M. SCHLECTER,
Attorneys for E. Shirazi, DDS, Inc.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920

# EXHIBIT 1

# Loan and Security Agreement

**Lender**

General Electric Capital Corporation
One Beacon Street
Boston, Massachusetts 02108-3107
Toll Free: 1-800-225-2488
Fax: 1-800-526-0259

**Borrower(s)**

Name E Shirazi DDS Inc.

Address ~~2222 East St.~~ 405 Davis cT, #603
~~Suite 280~~
~~Concord, CA 94520~~ San Francisco, CA 94111

Fax

**Location of Practice Assets (If Different From Above)**

Address

3333 W. Coast Highway
Newport Beach, CA 92663

| Number of Monthly Payments | Amount of Each Monthly Principal and Interest Payment | Due Date of First Monthly Payment |
|---|---|---|
| 1-3 | $0.00 | |
| 4-120 | $7,585.95 | |

**By signing this Agreement: (i) You acknowledge that you have read and understand the terms and conditions on the front and back of this Agreement, (ii) You agree that you cannot terminate or cancel this Agreement, you have an unconditional obligation to make all payments due under this Agreement, and you cannot withhold, set off or reduce such payments for any reason, even for defects in the Collateral, (iii) You warrant that the person signing this Agreement for you has the authority to do so and to grant the Power of Attorney set forth in Section 6 of this Agreement, (iv) You agree that this Agreement will be governed by the laws of the Commonwealth of Massachusetts and you consent to the jurisdiction of any State or Federal court located within Massachusetts, and (v) You agree that you will not sue Lender for any claim more than one year after the event on which you base your claim. You and Lender expressly waive any rights to a trial by jury.**

**Lender: General Electric Capital Corporation**

Signature [signature]

Date

Print Name

**Borrower**

Signature X [signature]

Date 3/28/07

Print Name Elham Shirazi

**PREAMBLE: RECITALS**

WHEREAS, Borrower has requested that Lender finance its purchase of certain medical practice assets (the "Practice Assets") pursuant to a certain Purchase and Sale Agreement (the "Purchase Agreement"), a copy of which has been provided to Lender;

WHEREAS, Lender is willing, on the terms and subject to the conditions of this Agreement and each other note, instrument and document delivered in connection herewith (together with this Agreement, the "Loan Documents"), to make such loan to Borrower;

NOW, THEREFORE, in consideration of the mutual promises contained herein and other good and valuable consideration, the receipt and sufficiency of which are acknowledged, Lender and Borrower hereby agree as follows:

**ARTICLE I: LOAN**

1.1 Term Loan. Subject to the terms and conditions hereof, Lender shall, upon execution of this Agreement, make a loan (the "Loan") to Borrower in the principal amount of $574,000.00 The Loan shall bear interest and be repaid in accordance with the terms set forth below.

1.2 Use of Proceeds. Borrower shall use the proceeds of the Loan to purchase the assets as set forth in the Purchase Agreement, or with Lender's prior written approval for working capital or for other general business purposes. Borrower hereby confirms that no material change has been made to the Purchase Agreement subsequent to its execution without Lender's prior written consent.

1.3 Obligations Unconditional. Borrower acknowledges that Lender had no involvement in the selection of the Practice Assets or in Borrower's negotiation and execution of the Purchase Agreement. Borrower's obligations under the Loan Documents are unconditional and independent of any rights, remedies or obligations that Borrower may have under the Purchase Agreement.

**ARTICLE II - PROMISSORY NOTE ("NOTE")**

2.1 Repayment. Borrower hereby agrees to pay, in United States dollars, to Lender or Lender's order, the entire amount of each Monthly Principal and Interest Payment, with interest at the rate implied in the determination of such Principal and Interest Payment, each as shown on the front of this Agreement, together with the other charges, insurance payments, taxes and other amounts described in this Agreement (collectively, the "Indebtedness"), all payable in installments for the number of months shown on the front of this Agreement or as otherwise here described. Notwithstanding anything in the Loan Documents to the contrary, Borrower shall remit to Lender at the closing of the Loan the first monthly payment due on the Loan, which payment shall be credited to the Loan as of the date such payment would be otherwise due under the terms of this Agreement. The remaining Monthly Payments will be due on the day of each subsequent month designated by us, for the number of months specified on the front of this Agreement. Each Monthly Payment will be in the amount specified on the front of this Agreement. You will make all payments required under this Agreement to us at such address as we may specify in writing. Payments will be due whether or not you receive an invoice. If any Monthly Payment or other amount payable to us is not paid within 10 days of its due date, you will pay us a late charge not to exceed 10% of the

AGREED AND ACCEPTED by ES -PLEASE INITIAL

EXHIBIT 1

overdue amount or $10, whichever is greater. At our option, we may also charge you interest on the overdue amount at the rate of 1 1/2 % per month.

After maturity (whether by acceleration after default or otherwise), interest shall be payable on the unpaid principal balance from time to time outstanding at a rate per annum equal to the interest rate applicable hereunder plus two percent (2%) per annum, until fully paid. Interest and fees shall be calculated on the basis of a 365-day year times the actual number of days elapsed. All payments will be applied first to any charges, costs, expenses or late fees outstanding, then to unpaid accrued interest and any balance to principal. In no event shall interest payable hereunder exceed the highest rate permitted by applicable law. To the extent any interest received by lender exceeds the maximum amount permitted, such payment shall be credited to principal, and any excess remaining after full payment of principal shall be refunded to Borrower.

2.2 Prepayment.
If the original term of this Note is less than eight years, you may at any time after you have made 12 full Monthly Payments of Principal and Interest, prepay the Note in full in an amount equal to the remaining balance as calculated by GECC's lease/loan portfolio management system (the System Balance).

If the original term of this Note is eight years or more, you may at any time after you have made 24 full Monthly Payments of Principal and Interest, prepay the Note in full in an amount equal to System Balance.

Any partial prepayment, as well as any prepayment tendered earlier than permitted under the terms of this Section 2.2, shall be credited to the balance of the next payment(s) due (and not just the principal portion(s) thereof) under this Note.

**ARTICLE III - SECURITY INTEREST**

3.1 Grant of Security Interest. As collateral security for the prompt and complete payment of the Loan and performance when due of all of the Obligations (as defined below), Borrower hereby grants to Lender a security interest in and lien on, and assigns, transfers, sets over and pledges to Lender all of Borrower's right, title and interest in, to and under the Collateral (as defined below).

3.2 Certain Definitions. The following terms when used herein shall have the meanings given below:

"UCC" means the Uniform Commercial Code as it may be in effect from time to time in the Commonwealth of Massachusetts.

"Accounts," "Equipment," "General Intangibles," and "Inventory" shall have the meanings given such terms in the UCC.

"Collateral" means all tangible and intangible personal property of Borrower, now owned or hereafter acquired and wherever located, including without limitation, all Accounts, Instruments and Documents, General Intangibles, Equipment, Inventory, Furniture, Fixtures, Accounts Receivable, deposits and all cash and non-cash proceeds and products of the foregoing, including insurance proceeds.

"Instruments and Documents" means all "instruments," "documents," "deposit accounts," and "chattel paper," as defined in Section 9-105 of the UCC, and all securities, warehouse receipts, documents of title, insurance policies, checks, notes and drafts.

"Obligations" means all obligations and liabilities of Borrower to Lender, now existing or hereafter incurred, direct or indirect, absolute or contingent, secured or unsecured, matured or unmatured.

**ARTICLE IV - REPRESENTATIONS AND WARRANTIES**

In order to induce Lender to enter into this Agreement, and to make the Loans, Borrower represents and warrants to Lender, that:

4.1 Purchase Agreement. All representations made by Borrower in the Purchase Agreement and, to the best of Borrower's knowledge, all representations made by the other party(s) to the Purchase Agreement, were true and accurate when made and continue to be true and accurate in all respects.

4.2 Licenses; Ownership of Property. Borrower (a) has obtained all licenses and permits and has filed all registrations necessary for the lawful operation of its business; and (b) has the power and authority and the legal right to own, lease and operate its property and to conduct the business in which it is currently engaged.

4.3 Authorization; Execution. Borrower has taken all necessary actions to authorize the execution, delivery and performance of each Loan Document to which it is a party and to authorize its borrowings hereunder, and each such Loan Document has been duly executed and delivered by Borrower. Each of the Loan Documents and each agreement, certificate, document, instrument or other paper delivered pursuant thereto, to which Borrower is a party, constitutes the legal, valid, and binding obligation of Borrower enforceable against Borrower in accordance with its terms.

4.4 Patient Records and Charts. Borrower hereby acknowledges that it has reviewed the patient records and charts as identified in the Purchase Agreement, and certifies that the representations made in the Purchase Agreement as to the number and content of those records is accurate.

**ARTICLE V - COVENANTS**

5.1 Location of Collateral. The Collateral will be kept at Borrower's place of business as set forth at the last page of this Agreement, and Borrower will not remove the Collateral from said location without the prior written consent of Lender.

5.2 Further Assurances. Borrower will execute and deliver any further instruments and documents and take such further action as Lender may reasonably request from time to time to preserve and perfect Lender's rights hereunder.

5.3 Limitation on Liens. Borrower will not create, permit or suffer to exist, and will defend the Collateral against and take such other action as is necessary to remove, any lien, claim or right, in or to the Collateral, except the lien granted to Lender herein and any other lien permitted in writing by Lender. At Lender's request, Borrower will defend the right, title and interest of Lender in and to any of the Collateral against the claims and demands of all persons whomsoever.

5.4 Sale of Collateral. Borrower will not sell, transfer, lease or otherwise dispose of any of its interest in the Collateral, except for use of inventory and the collection of Accounts in the ordinary course of its business.

5.5 Inspection. Borrower agrees to permit Lender to visit and inspect its property, to inspect and audit its books of record and account and to make photocopies thereof, to review its accounts and to discuss the affairs, finances and accounts of Borrower with its officers, employees and accountants, all at such times during normal business hours and as often as Lender may reasonably request.

5.6 Insurance. Borrower will maintain with financially sound and reputable companies casualty and liability insurance in such amounts and coverages as may be reasonably satisfactory to Lender, with losses payable, in the case of casualty policies, to Borrower and Lender as their respective interests may appear. All insurance policies shall note Lender as loss payee and shall contain such other terms and conditions as may be customarily required by Lender. All insurance proceeds received by Lender may be applied in its discretion to the satisfaction of the Obligations or to repair or replacement of any property which sustained the casualty, except as otherwise required by applicable law. Borrower must also maintain such life and/or disability insurance policies as required by Lender, throughout the entire term of the Note.

5.7 Maintenance of Equipment. Borrower will keep and maintain each item of Equipment in good operating condition, ordinary wear and tear excepted, and the Borrower will provide all maintenance and service and all repairs necessary for such purpose.

**ARTICLE VI - REMEDIES**

6.1 Lender's Appointment as Attorney-in-Fact. Borrower hereby appoints Lender or any officer or agent of Lender as Borrower's attorney-in-fact with full power of substitution, which power of attorney shall be irrevocable and shall be deemed to be coupled with an interest, to take the following actions in the name of the Borrower or in its own name: (a) execute and file or record all instruments and

AGREED AND ACCEPTED by ___ KS ___ - PLEASE INITIAL 2

documents necessary to accomplish the purposes of this Agreement including without limitation UCC financing statements; (b) exercise any other rights and remedies of Lender hereunder and perform any other actions required to be performed by Borrower hereunder.

6.2 Rights Upon Default. Upon the failure by Borrower to pay when due any Obligations or to timely perform any of its other obligations to Lender under the Loan Documents (an "Event of Default"): (a) Lender shall be entitled to all of the rights and remedies of a secured creditor under the UCC; (b) Lender shall have the right to take possession of the Collateral and at Lender's request, Borrower shall assemble the Collateral and make it available to Lender at any place reasonably convenient to Lender; (c) Lender may sell, lease or otherwise dispose of the Collateral in one or more parcels, at public or private sale or sales, at such prices as it may deem appropriate, for cash or credit, from Borrower's place of business or otherwise. Borrower agrees that Lender need not give more than ten (10) days' notice (deemed given when mailed) of the time and place of any public sale or time after which a private sale may take place, and that such notice is commercially reasonable. Borrower shall remain liable for any deficiency if the proceeds of any sale or disposition of Collateral are less than the outstanding Obligations.

6.3 Lender's Obligations. Beyond the safe custody thereof, Lender shall have no duty as to any Collateral in its possession or as to the preservation of rights against prior parties or any other rights pertaining thereto. In any action brought by Lender under any Collateral to enforce any provision thereof, Borrower will indemnify Lender for all expense, loss or damage suffered by reason of any defense, setoff, counterclaim, recoupment or reduction of liability of the obligee thereunder arising out of a breach by Borrower of any of its obligations to such obligee.

ARTICLE VII - MISCELLANEOUS

7.1 Notices. Except as otherwise specified herein, all notices hereunder shall be in writing, shall be sent to the addresses set forth below or at such other address as any party hereto may hereafter specify to the other in writing, and shall be deemed delivered on receipt, if teletransmitted or delivered by hand, or three (3) business days after mailing, and all notices to Lender shall be by certified mail, postage prepaid.

7.2 Remedies; No Waiver. The rights and remedies provided in the Loan Documents are cumulative and not exclusive of any other rights or remedies provided by law. No failure to exercise nor any delay in exercising, on the part of Lender, any right, remedy, power or privilege under the Loan Documents shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power, or privilege operate as a waiver of any further or complete exercise thereof. No waiver of or consent to any breach on one occasion shall be deemed a waiver or consent on any other occasion.

7.3 Cross Default. Any default by Borrower under any of the Loan Documents shall also constitute a default and Event of Default under all other agreements, leases, instruments and documents evidencing or relating to any obligation of Borrower to, or agreements between Borrower and Lender. Any default by Borrower under any mortgage or office lease related to its place of business or under any instrument or document between Borrower and the seller(s) of the Practice Assets shall also constitute an Event of Default under the Loan Documents.

7.4 Successors. This Agreement shall be binding upon and inure to the benefit of Borrower, Lender and their respective heirs, successors and assigns, except that Borrower may not assign or transfer its rights or obligations hereunder without the prior written consent of Lender. .

7.5 Complete Agreement, Amendments. This Agreement, together with the Note and other Loan Documents, contains the entire agreement between the parties with respect to the transactions contemplated hereby, and supersedes all previous written or oral communications with respect thereto, and signatures by facsimile and/or in counterparts are binding and fully enforceable. This Agreement may only be amended, modified, waived, discharged or terminated by a writing signed by the party to be charged.

7.6 Expenses. In the event of default, Borrower shall pay all out-of pocket expenses (including reasonable attorneys' fees) incurred by Lender in connection with (a) filing or recording of the Loan Documents, any amendments or waivers of the Loan Documents and (b) the collection of the Loans and the other Obligations or with the preservation, exercise or enforcement of Lender's rights and remedies under the Loan Documents. This covenant shall survive payment of the Loan, and termination of this Agreement.

7.7 Survival of Agreements. All covenants, agreements, representations and warranties made herein and in the certificates delivered pursuant hereto shall survive the making of Loan, the execution and delivery to Lender of the Note and shall continue in full force and effect so long as the Note is outstanding and unpaid, or this Agreement remains in effect.

7.8 Severability. Any provision hereof that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

7.9 Liability. In the event more than one Borrower is named in this Agreement, the liability of each shall be joint and several.

# EXHIBIT 2

Andrew K. Alper (State Bar No. 088876)
aalper@frandzel.com
FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 Wilshire Boulevard
Seventeenth Floor
Los Angeles, California 90048-4920
Telephone: (323) 852-1000
Facsimile: (323) 651-2577

Attorneys for Plaintiff Matsco, a Division of Wells Fargo Bank, N.A.

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER
APR 05 2010
ALAN CARLSON, Clerk of the Court
BY S TURNER

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF ORANGE, CENTRAL DISTRICT**

| | |
|---|---|
| MATSCO, a Division of WELLS FARGO BANK N.A., a national banking association,<br><br>Plaintiff,<br><br>v.<br><br>E. SHIRAZI, DDS., INC., a California corporation; E. SHIRAZI, DDS aka ELHAM SHIRAZI aka ELHAM SHIRAZI, DDS aka DR. ELHAM SHIRAZI; FARKHONDEH TAJIK; HAMZEH J. SHIRAZI; ~~and DOES 1 through 10~~, ~~Inclusive~~,<br><br>Defendants. | CASE NO. 30-2009-00121699-CU-CO-CJC<br><br>Assigned Judge: Honorable Franz E. Miller<br><br>**DEFAULT JUDGMENT BY COURT**<br><br>Dept. C9<br><br>Filing Date: 4/17/09<br>Trial Date: Not Set |

This cause came to be heard before the Honorable Franz E. Miller, judge presiding in Department C9, by submission of the attorneys of record for Plaintiff MATSCO, a Division of WELLS FARGO BANK N.A., a national banking association ("Plaintiff"), Frandzel Robins Bloom & Csato, L.C., and it appearing that Defendants E. SHIRAZI, DDS., INC., a California corporation; E. SHIRAZI, DDS aka ELHAM SHIRAZI aka ELHAM SHIRAZI, DDS aka DR. ELHAM SHIRAZI; FARKHONDEH TAJIK; and HAMZEH J. SHIRAZI ("Defendants"), having been regularly served with process, having failed to appear and answer the Plaintiff's Complaint filed herein on April 17, 2009, and the default of the Defendants having been entered and evidence having been introduced in open session of this Court or having been considered by the court:



EXHIBIT 2

8

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that Plaintiff MATSCO, a Division of WELLS FARGO BANK N.A., a national banking association, shall recover from Defendants E. SHIRAZI, DDS., INC., a California corporation; E. SHIRAZI, DDS aka ELHAM SHIRAZI aka ELHAM SHIRAZI, DDS aka DR. ELHAM SHIRAZI; FARKHONDEH TAJIK; and HAMZEH J. SHIRAZI, the sum of $801,763.91, which amount includes principal in the sum of $781,352.85, late fees in the amount of $9,372.80, attorney's fees in the sum of $10,457.26, and costs of suit in the sum of $581.00, together with interest on said judgment as provided by law.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Plaintiff MATSCO, a Division of WELLS FARGO BANK N.A., a national banking association, recover from Defendants E. SHIRAZI, DDS., INC., a California corporation; E. SHIRAZI, DDS aka ELHAM SHIRAZI aka ELHAM SHIRAZI, DDS aka DR. ELHAM SHIRAZI; FARKHONDEH TAJIK; and HAMZEH J. SHIRAZI , a Judgment for Claim of Delivery and for possession of personal property described as follows:

> All of E. SHIRAZI, DDS., INC., a California corporation's cash, accounts, chattel paper, and other rights to payment, whether then owned or thereafter acquired, all inventory, whether then owned or thereafter acquired, all equipment, whether then owned or thereafter acquired, and all general intangibles and contract rights including all patient charts and records of E. SHIRAZI, DDS., INC., a California corporation whether then owned or thereafter acquired together with all substitutions and replacements for and products and proceeds of the foregoing personal property and books and records related thereto and wherever such personal property assets were located (collectively "the Collateral").

Should Plaintiff MATSCO, a Division of WELLS FARGO BANK N.A., a national banking association, recover the Collateral and thereafter sell the Collateral, the net proceeds from said sale, after deduction of reasonable expenses of retaking, holding, preparing for sale, selling and the like, shall be applied to reduce the amount of the Judgment herein and Plaintiff shall file a



9

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

Partial Satisfaction of Judgment giving credit to the Defendants for the proceeds from the sale of the Collateral.

**THE CLERK IS ORDERED TO ENTER THE JUDGMENT.**

Dated: April 5, 2010

Judge Franz E. Miller

FRANZ E. MILLER, JUDGE OF THE
SUPERIOR COURT OF CALIFORNIA

# EXHIBIT 3

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Diligenz
(800)858-5294

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**
DILIGENZ INC
6500 HARBOR HEIGHTS PKWY STE 400
MUKILTEO, WA 98275
USA

DOCUMENT NUMBER: 12010350002
FILING NUMBER: 07-7107333596
FILING DATE: 03/23/2007 06:16
IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names**

| | | | | |
|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME: E SHIRAZI DDS INC. | | | | |
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS: 2222 EAST ST SUITE #290 | CITY: CONCORD | STATE: CA | POSTAL CODE: 94520 | COUNTRY: USA |
| 1d. SEE INSTRUCTIONS / ADD'L DEBTOR INFO | 1e. TYPE OF ORGANIZATION: Corporation | 1f. JURISDICTION OF ORGANIZATION: CA | 1g. ORGANIZATIONAL ID#, if any: C2883781 | ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names**

| | | | | |
|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME: E SHIRAZI DDS INC. | | | | |
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS: 3333 W. COAST HIGHWAY | CITY: NEWPORT BEACH | STATE: CA | POSTAL CODE: 92663 | COUNTRY: USA |
| 2d. SEE INSTRUCTIONS / ADD'L DEBTOR INFO | 2e. TYPE OF ORGANIZATION: Corporation | 2f. JURISDICTION OF ORGANIZATION: CA | 2g. ORGANIZATIONAL ID#, if any: C2883781 | ☐ NONE |

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)**

| | | | | |
|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME: General Electric Capital Corporation | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS: One Beacon Street | CITY: Boston | STATE: MA | POSTAL CODE: 02108 | COUNTRY: USA |

**4. This FINANCING STATEMENT covers the following collateral:**
Debtor hereby grants to Secured Party a continuing security interest in all assets , now owned or hereafter acquired and wherever located including without limitation all equipment, inventory, investment property, cash, and deposit accounts, policies of insurance, fixtures and general intangibles of every kind, together with all improvements and additions to, replacements and upgrades for and proceeds of all the foregoing.

**5. ALT DESIGNATION:** ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

☐ **6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Attach Addendum [if applicable]**

**7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional]** ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

**8. OPTIONAL FILER REFERENCE DATA**
[25234634]

FILING OFFICE COPY

EXHIBIT 3

11

# EXHIBIT 4

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Diligenz
(800)858-5294

B. SEND ACKNOWLEDGMENT TO: (Name and Address)
DILIGENZ INC
6500 HARBOR HEIGHTS PKWY STE 400
MUKILTEO, WA 98275
USA

DOCUMENT NUMBER: 12059190002
FILING NUMBER: 07-7107794567
FILING DATE: 03/27/2007 12:45
IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | | | | | |
|---|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME | | | | | |
| OR 1b. INDIVIDUAL'S LAST NAME: SHIRAZI | FIRST NAME: ELLIAM | | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS: 405 DAVID CT | CITY: SAN FRANCISCO | | STATE: CA | POSTAL CODE: 94111 | COUNTRY: USA |
| 1d. SEE INSTRUCTIONS / ADD'L DEBTOR INFO | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID#, if any ☐NONE | | |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| | | | | | |
|---|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | | | |
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 2d. SEE INSTRUCTIONS / ADD'L DEBTOR INFO | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID#, if any ☐NONE | | |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME: General Electric Capital Corporation | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS: One Beacon Street, 2nd Floor | CITY: BOSTON | STATE: MA | POSTAL CODE: 02109-1803 | COUNTRY: USA |

4. This FINANCING STATEMENT covers the following collateral:
Debtor hereby grants to secured party a Continuing security interest in all assets, now owned or hereafter acquired and whenever located, including without limitation all equipment, inventory, investment property, cash and deposit accounts, policies of insurance, fixtures and general intangibles of every kind, together with all improvements and additions to, replacements and upgrades for and proceeds of all the foregoing, provided, however that Secured Party's interest shall not extend to any assets used by Debtor at all times solely for personal, household or family purposes and not in any manner or for professional or commercial purpose.

5. ALT DESIGNATION: ☐LESSEE/LESSOR ☐CONSIGNEE/CONSIGNOR ☐BAILEE/BAILOR ☐SELLER/BUYER ☐AG. LIEN ☐NON-UCC FILING

☐6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Attach Addendum [if applicable]

7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] ☐All Debtors ☐Debtor 1 ☐Debtor 2

8. OPTIONAL FILER REFERENCE DATA
[25308078]

FILING OFFICE COPY

EXHIBIT 4

12